UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KEVIN JENKINS, an individual,

        Plaintiff,

v.                                                            Case No. 5:07-cv-133-Oc-GRJ

CHARLES R. JURY, an individual, MARY
ALICE TILLAPAUGH, an individual,

        Defendants.
_____

## MEMORANDUM DECISION AND ORDER

This lawsuit was brought by Plaintiff, Kevin Jenkins ("Jenkins") against Charles R. Jury ("Jury") and Alice Tillapaugh ("Tillapaugh") for copyright infringement and unfair competition arising out of Defendants' alleged infringement of Jenkins metal fish sculptures. A non-jury trial was held before the undersigned on February 3, 2009. In accordance with Fed. R. Civ. P. 52, the following constitutes the Court's findings of fact and conclusions of law.

### I. DISCUSSION

Following the Court's Orders on Defendants' motions for summary judgment (Docs. 28 & 38), the only claim remaining for trial was Jenkins' claim against Jury for copyright infringement. At trial, Jenkins clarified that he was no longer seeking damages and was only seeking injunctive relief.

## A. Factual Record

The following facts were established by a preponderance of the testimony[1] and documentary evidence offered and admitted into evidence. For many years, Jenkins has designed and created metal fish sculptures. He has established a valuable business based on demand for his metal fish sculptures. In the 1990's, Jenkins designed and created three metal fish sculptures known as "Purple Tail", "Short Big Eye" and "Quillback Rockfish."[2]

The "Purple Tail" is a completely imaginary sculpture as there is no such fish in nature.[3] In creating the "Purple Tail", Jenkins incorporated different elements (i.e., shape of the fins or size of the tail) that customers at art shows had liked. The most distinctive feature of the "Purple Tail" is its big sloping forehead. It also has a dorsal fin with three forward-leaning rays and then three wider rays; a soft dorsal with one spiny ray; an ovate tail; a pectoral fin with seven spiny rays that give the fin a scalloped shape on the back side; an anal fin with one spiny ray on the bottom of it; and a mouth at the bottom of its face.

Jenkins' other two sculptures – "Short Big Eye" and "Quillback Rockfish" – are considered fanciful because they are his own interpretation of fish that actually are found in nature. There are significant differences between Plaintiff's interpretation of these fish and the actual fish.

---

[1] Plaintiff presented the testimony of Mr. Jury and himself. Defendant offered no witnesses.

[2] The first publication of "Purple Tail" was June 1, 1996. See Plaintiff's Exhibit 4. The first publication of "Short Big Eye" was June 5, 1990. See Plaintiff's Exhibit 6. The first publication of "Quillback Rockfish" was April 4, 1992. See Plaintiff's Exhibit 8.

[3] A photograph of the "Purple Tail" sculpture was admitted as Plaintiff's Exhibit 1.

Turning first to the "Short Big Eye",[4] the spiny dorsal has twelve spines while there are only ten spines in nature. The soft dorsal is short and rounded, where as the soft dorsal on the real fish is more angular and has a different angle in the back which changes the shape of the fin. The caudal fin is rounded, while in nature the caudal fin has squared corners. Further, the anal fin has three rounded rays in the front, while in nature the rays are spiny. The pelvic fin has scalloping, where as the real fish does not. The mouth, as well, is different in that it is not as upward-pointing as the mouth on the real fish. Lastly, while the eye on the real fish can take up more than 50% of the face, the eye on the sculpture is proportionally much smaller.

Jenkins' "Quillback Rockfish" sculpture also differs from the quillback rockfish found in nature.[5]   Specifically, the spiny dorsal rays are rounded while the real fish has sharp quill-like rays connected with webbing; the soft dorsal is a different shape from the real fish which is almost square; the caudal fin is rounded; the pelvic and pectoral fins have scalloping, where as those fins on the real fish do not; the pectoral fin on the real fish is more diamond-shaped; the eye on the real fish protrudes and is bulbous, while the eye on the sculpture does not; and the mouth on the real fish is more upward-pointing than the sculpture.

Since their creation and publication in the 1990's, Jenkins has displayed these three fish sculptures in his gallery/studio in Homosassa, Florida, on his business

---

[4] A photograph of the "Short Big Eye" sculpture was admitted as Plaintiff's Exhibit 2.

[5] A photograph of the Quillback Rockfish sculpture was admitted as Plaintiff's Exhibit 3.

websites,[6] at art shows throughout the United States, in Norway, and in The Rain Barrel Art Gallery in Islamorada, Florida.

Jury owns "World Shells & Co." in Inglis, Florida. It is a wholesale business that sells seashells, gifts and souvenirs as well as a retail gift shop that sells all types of gifts. In 2002 or 2003, Jury began selling metal fish sculptures in his gift shop, including purple tails or purple fins (hereinafter "accused purple tails"), big eyes or short big eyes (hereinafter "accused short big eyes"), and quillfish or quillback rockfish (hereinafter "accused quillback rockfish.").[7] Jury bought these accused fish from third-party vendors – Tiffany's Handcrafted, Natural Magic Environmental Trading Company, and Hummingbird Imports International. These accused fish appeared remarkably similar to Jenkins' sculptures.

The accused purple tail not only shares the same name as Jenkins' completely imaginary "Purple Tail", but it also shares most of the same elements. Indeed, both the "Purple Tail" and the accused purple tail have a long sloping face with a mouth at the bottom; a spiny dorsal fin with three forward-leaning rays and three spiny rays; a soft dorsal fin with one spiny ray; an ovate caudal fin; an anal fin with one spiny ray in front; a pectoral fin with seven scalloped rays; and the same gill line.

Likewise, Jenkins' fanciful "Short Big Eye" and the accused short big eye and Jenkins' fanciful "Quillback Rockfish" and the accused quillback rockfish share a number of similar elements – none of which occur in the real fish in nature. Specifically,

---

[6] Plaintiff identified three internet addresses – www.fishsculpture.com, www.fishsculptures.com, and www.coppersculpture.com.

[7] Photographs of these fish were admitted as Plaintiffs' Exhibits 13-18.

4

Jenkins' fanciful "Short Big Eye" and the accused short big eye both have twelve spiny rays on the dorsal fin; a soft dorsal that was short and rounded; a rounded caudal fin; a scalloped anal fin without sharp spines; a scalloped pelvic fin; a similarly positioned mouth; and a proportionally smaller eye. Jenkins' fanciful "Quillback Rockfish" and the accused quillback rockfish both have the same rounded rays on the spiny dorsal fin; a rounded and diminutive soft dorsal; a rounded caudal fin; scalloping on the pelvic and pectoral fins; a mouth that is not upward looking; and a lack of barbs on the gill plate.

In May 2006, Plaintiff saw what he believed to be a copy of his "Purple Tail" at an art festival in Fernandina Beach, Florida. The vendor told Plaintiff that he bought the alleged copies of the "Purple Tail" from a store called "Real Deals" in Jefferson, Georgia. Plaintiff contacted Real Deals and learned that the metal fish were imported from a company in Haiti. Plaintiff subsequently learned of various importers who were importing the fish from the company in Haiti, including Natural Magic Environmental Trading Company from Islamorada, Florida, which is located only miles from the Rain Barrel Art Gallery where Plaintiff had displayed his sculptures.

In mid-2006, Plaintiff was driving by Jury's business and saw accused purple tails, accused quillback rockfish and accused short big eyes hanging on racks in front of the gift shop. At that point, Plaintiff filed for registration of copyrights for the "Purple Tail," "Quillback Rockfish" and "Short Big Eye." The United States Copyright Office subsequently issued to Plaintiff Certificates of Registration for the three sculptures.[8]

---

[8] Copyright Certificate of Registration VA-1-370-920 was issued on August 27, 2006 for the sculpture entitled "Purple Tail." See Plaintiff's Exhibit 4. Copyright Certificate of Registration VA 1-380-660 was issued on September 14, 2006 for the sculpture entitled "Short Big Eye." See Plaintiff's Exhibit 6. Copyright Certificate of Registration Va 1-380-661 was issued on September 14, 2006 for the sculpture
(continued...)

On April 9, 2007, Jenkins filed the instant action. After suit was filed, Jury received at least two shipments from Tiffany's Handcrafted that included the accused fish.[9] On July 13, 2007, counsel for Jury wrote Jenkins' counsel offering to stop selling the accused fish if the action was dismissed and both parties would bear their own attorneys fees and costs.[10] Only two weeks later, on July 31, 2007, the accused fish were still on display at Jury's gift shop.[11]

### B. *Legal Analysis*

An action for copyright infringement requires proof that the plaintiff owns a valid copyright and that the defendant has copied the protected work.[12] Jenkins has submitted a copy of his certificates of copyright registration for "Purple Tail", "Short Big Eye" and "Quillback Rockfish" as proof of his ownership of a valid copyright in these sculptures.[13] At trial, Jury did not seriously contest the validity of these copyrights.[14]

A certification of registration "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the

---

[8](...continued)
entitled "Quillback Rockfish." See Plaintiff's Exhibit 8.

[9] See Plaintiff's Exhibits 22/M -22/O.

[10] See Plaintiff's Exhibit 26.

[11] See Plaintiff's Exhibits 27A-27F.

[12] Benson v. Coca-Cola Co., 795 F.2d 973, 974 (11th Cir. 1986.)

[13] See Plaintiff's Exhibits 5, 7 & 9.

[14] While Defendant suggested in his trial memorandum that Plaintiff's copyright was not valid because Plaintiff's sculptures lacked the requisite creativity, defense counsel clarified at trial that Defendant's challenge was focused on the second prong of the analysis – i.e., whether Defendant copied the protected work.

copyright and of the facts stated in the certificate."[15]  The evidentiary weight accorded a certificate registered more than five years after the first publication "shall be within the discretion of the Court."

Here, even though Jenkins registered the copyrights more than five years after publication of his sculptures, the Court has no difficulty according great weight to the certificates of registration.  As noted above, Jury did not seriously challenge the validity of these copyrights at trial.  Moreover, even if he had, the Court finds that Jenkins' sculptures are exactly the sort of work that may be copyrighted.[16]  Indeed, the evidence is undisputed that Plaintiff independently created the imaginary "Purple Tail," fanciful "Short Big Eye" and fanciful "Quillback Rockfish" and that they possess more than a "minimal degree of creativity."[17]

Accordingly, the Court concludes that the Certificates of Registration are prima facie evidence that Jenkins has valid copyrights.  Because Jury did not make any argument or offer any evidence at trial to rebut the validity of these copyrights, the Court finds that Jenkins has valid copyrights in "Purple Tail," "Short Big Eye" and "Quillback Rockfish."

---

[15] 17 U.S.C. §410(c).  Copyright registration is not a prerequisite to copyright protection.  Rather, an author has a valid copyright in an original work at the moment it is "fixed in any tangible medium of expression.  See 17 U.S.C. 102(a). Registration is not obligatory, although registration is a prerequisite to an infringement suit in certain circumstances and is a prerequisite to certain infringement remedies.  See e.g., 17 U.S.C.  §§408, 411, 412.

[16] See 17 U.S.C. §102.

[17] See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991.)

7

Next, Jenkins must prove copying. Since there is seldom direct evidence of copying, this element is usually established circumstantially, by showing that the person who composed the defendant's work had access to the copyrighted material and that there is substantial similarity between the two works.[18] If the plaintiff cannot show access, he may still prevail by demonstrating that the works are "strikingly similar."[19]

At trial, Jenkins did not attempt to prove access to the Plaintiff's sculptures, but instead, focused his argument on the "striking similarity" between the accused fish and his sculptures.[20] Nevertheless, the Court will briefly discuss access.

Since evidence of actual viewing or knowledge of the copyrighted work is virtually impossible to prove, the Eleventh Circuit regards access as a "reasonable opportunity to view" the copyrighted work.[21] Jenkins brought suit against Jury but not the company in Haiti that purportedly is manufacturing the accused fish nor against the third-party vendors who sold the accused fish to Jury. There is no evidence that Jury himself copied the sculptures or that he ever had contact with the Haitian company. Moreover, Jenkins never displayed his art in Haiti and there is no evidence to suggest that any

---

[18] Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1249 (11th Cir. 1999.)

[19] Id. at 1248.

[20] See e.g., Doc. 53 at 10 (Plaintiff's Trial Brief) ("the evidence will unequivocally illustrate that certain similarities between [Plaintiff's fish sculptures] and the accused metal fish sculptures are so "striking" that the similarities cannot satisfactorily be accounted for by a theory of coincidence, independent creation, prior common source, or any theory other than copying.")

[21] Herzog, 193 F.3d at 1249 (quoting Ferguson v. National Broadcasting Co., 584 F.2d 111, 113 (5th Cir. 1978.))

person associated with the Haitian company had access to Plaintiff's sculptures.[22] Under these circumstances, Plaintiff has not shown that Defendant had a "reasonable opportunity to view" the copyrighted sculptures.

Although Jenkins did not demonstrate access he still, nonetheless, can establish copying by showing that his sculptures and the accused fish are "strikingly similar." Striking similarity exists where the proof of similarity in appearance is "so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded."[23]

The Court has compared closely the accused fish and Jenkins' sculptures and has no difficulty finding that they are "strikingly similar."[24] This is especially true in the case of the "Purple Tail" because it is a fictional fish that does not exist in nature. The accused purple tail shares not only the same name with the "Purple Tail," but also most of the same elements. Side by side comparison of Jenkins' "Purple Tail" and the accused purple tail, shows that they both have a long sloping face with a mouth at the bottom; a spiny dorsal fin with three forward-leaning rays and three spiny rays; a soft dorsal fin with one spiny ray; an ovate caudal fin; one spiny ray in the front of the anal fin; a pectoral fin with seven scalloped rays; and the same gill line. Because Jenkins

---

[22] There is evidence that one of the company's importing the accused fish from the Haitian company – Natural Magic Environmental Trading Company – is located in the same town as the Rain Barrel art gallery where Plaintiff's sculptures have been on display. While this might seem suspicious to Plaintiff, it is simply too speculative to support a finding of access.

[23] Corwin v. Walt Disney Co., 475 F.3d 1239, 1253 (11th Cir. 2007)(quoting Selle v. Gibb, 741 F.2d 896, 901 (7th Cir. 1984.))

[24] While some courts have required expert testimony to establish striking similarity, such testimony is unnecessary in this case because this is not a "technical" field in which the trier of fact is not able to make this determination. See Kent v. Revere, 1985 WL 6453, *7 (M.D. Fla. 1985.)

created his "Purple Tail" from whole cloth, these similarities are especially compelling and could not be the result of "independent creation, coincidence [or] prior common source."[25]

Unlike the "Purple Tail" which is imaginary, Plaintiff's "Short Big Eye" and "Quillback Rockfish" are "fanciful" interpretations of fish that actually occur in nature. A copyright protects only the expression of ideas, and not the ideas themselves.[26] As such, the Court must consider whether the similarities between Jenkins' sculptures and the accused fish are the result of copying or are merely flowing from the fact that they are sculptures of the same type of fish. However, after comparing side by side, Jenkins' sculptures and the accused fish, the Court again has no difficulty concluding that they are "strikingly similar." The elements of Jenkins' expressions of the "Short Big Eye" and the "Quillback Rockfish" are significantly different from the way the fish actually appear in nature and the accused fish differ from their natural counterparts in the same ways.

Indeed, Jenkins "Short Big Eye" and the accused short big eye share at least six elements that are different from the short big eye that occurs in nature. They have twelve spiny rays on the dorsal fin, instead of ten spiny rays in nature; the soft dorsal is short and rounded, where as the soft dorsal on the real fish is more angular and has a different angle in the back which changes the shape of the fin; the caudal fin is rounded, where as the real fish has squared corners; the anal fin has rounded rays, instead of sharp spines on the real fish; the pelvic fin is scalloped, where as the pelvic fin on the

---

[25] See Corwin, 475 F.3d at 1253.

[26] Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1368 n.1 (5th Cir. 1981.)

10

real fish is not; the mouth is not as upward-pointing as the mouth on the real fish; and while the eye on the real fish can take up more than 50% of the face, the eyes on the sculpture and the accused fish are proportionally much smaller.

Likewise, Plaintiff's "Quillback Rockfish" and the accused quillback rockfish share at least seven elements in common that do not occur in the real quillback rockfish. Specifically, they have the same rounded rays on the spiny dorsal fin instead of the sharp quill-like rays connected with webbing on the real fish; a rounded and diminutive soft dorsal instead of the square shape on the real fish; scalloping on the pelvic and pectoral fins, where as the fins on the real fish are not scalloped; a rounded caudal fin instead of the square shape on the real fish; a mouth that is less upward looking than in nature; and a lack of barbs on the gill plate.

Accordingly, the Court finds that Jenkins has established the second element of his copyright infringement action – i.e., copying – by showing that the accused fish and Jenkins' copyrighted sculptures are "strikingly similar." Defendant has not argued or offered any evidence of independent creation or common source to refute the Court's finding of copying.[27]

In summary, Jenkins has proved the two elements – ownership of a valid copyright and copying – necessary to establish his right to recover from Jury for copyright infringement.

At trial, Plaintiff clarified that he is only seeking permanent injunctive relief preventing Jury from infringing his copyrights. Having found liability for copyright

---

[27] Donald Frederick Evans And Assoc., Inc. v. Continental Homes, Inc., 785 F.2d 897, 905 (11th Cir. 1986.)

infringement, the Court has the authority under the Copyright Act to grant injunctive relief to prevent further violations of Plaintiff's copyrights.[28] The Copyright Act empowers district courts to issue injunctions "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."[29] An injunction is appropriate when there is "a past infringement and a substantial likelihood of future infringement."[30]

The Court has found that Jury infringed Plaintiff's copyrights. Moreover, there is substantial likelihood of future infringement. Notwithstanding the fact that Jury represented that he no longer sells the accused fish, there was evidence at trial that after suit was filed Jury received at least two shipments of the accused fish and he continued to display them at his gift shop. In addition, the Court has no reason to believe that the Haitian company has stopped manufacturing the accused fish or that the third-party vendors have stopped importing the accused fish and selling them. For these reasons, the Court find that a permanent injunction is appropriate in this case.

## II. CONCLUSION

Accordingly, for the reasons discussed above, the Court finds that:

1. Plaintiff, Kevin Jenkins ' Copyright Registration VA-1-370-920 issued August 27, 2006 for the sculpture entitled "Purple Tail" is valid;

2. Plaintiff, Kevin Jenkins' Copyright Registration VA-1-380-660 issued September 14, 2006 for the sculpture entitled "Short Big Eye" is valid;

---

[28] 17 U.S.C.A. §502(a).

[29] Id.

[30] Pacific and S. Co., Inc. v. Duncan, 744 F.2d 1490, 1499 (11th Cir. 1984.)

3. Plaintiff, Kevin Jenkins' Copyright Registration VA-1-380-661 issued September 14, 2006 for the sculpture entitled "Quillback Rockfish" is valid;

4. Defendant, Charles R. Jury infringed Kevin Jenkins' copyright registrations VA-1-370-920 entitled "Purple Tail", VA-1-380-660 entitled "Short Big Eye" and VA-1-380-661 entitled "Quillback Rockfish";

5. Defendant, Charles R. Jury, his agents, servants, employees and all those in privity with him are hereby permanently enjoined from infringing Kevin Jenkins' copyright registrations VA-1-370-920 entitled "Purple Tail", VA-1-380-660 entitled "Short Big Eye", and VA-1-380-661 entitled "Quillback Rockfish" in any manner including reproducing the copyrighted works in copies; preparing derivative works based upon the copyrighted works; and distributing copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending;

6. The Clerk is directed to enter final judgment in favor of Plaintiff, Kevin Jenkins against Defendant, Charles R. Jury on Count One of the Amended Complaint consistent with this Order; enter judgment in favor of Defendant Mary Alice Tillapaugh in accordance with the Court's order awarding attorney's fees; and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on April 16, 2009.

*[Signature]*
GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel